IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In the Matter of:

Dan R. Willis and Pamela A. Willis,

(Chapter 7)

Debtors.

Case No. 12-16372

MEMORANDUM DECISION

Debtors claimed the federal exemptions in their amended claim of exemptions. The trustee objected. The debtors, who now live in Wisconsin, were domiciled in both Illinois and Wisconsin during the 730 days immediately preceding the filing of their bankruptcy petition. They were domiciled in Illinois (an "opt-out" state) during the 180 days immediately preceding that 730-day period. The trustee argues that under 11 U.S.C. § 522(b)(3), the debtors may take only the exemptions set out in the state statutes of Illinois.

Under 11 U.S.C. § 522(b)(1), a debtor generally may choose to take either the federal exemptions or the exemptions available under applicable state law. However, if the applicable state has "opted out" of the federal exemptions, a debtor is limited to her state law exemptions. *See* 11 U.S.C. § 522(b)(2).

Section 522(b)(3) determines which state's exemption laws apply to a particular debtor, based on the debtor's domicile. Section 522(b)(1) allows a debtor to exempt "property listed in . . . paragraph (3) of this subsection," and Section 522(b)(3) provides,

(3) Property listed in this paragraph is—

1

> (A) subject to subsections (o) and (p), any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located in a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place . . .
>
> If the effect of the domiciliary requirement under subparagraph (A) is to render the debtor ineligible for any exemption, the debtor may elect to exempt property that is specified under subsection (d) [*i.e.*, the federal exemptions].

11 U.S.C. § 522(b)(3).

Bankruptcy courts in the Seventh Circuit are divided on the effect of Section 522(b) in cases like this one. *In re Shell* and *In re George* both confronted similar facts: where the debtor's domicile was not located in a single state for the 730 days immediately preceding the filing of her bankruptcy petition, and the debtor was domiciled in Illinois for the 180 days immediately preceding the 730-day period. *Shell*, 478 B.R. 889, 901 (Bankr. N.D. Ind. 2012); *George*, 440 B.R. 164, 167 (Bankr. E.D. Wis. 2010).

The bankruptcy court for the Eastern District of Wisconsin held in *George* that the debtor was ineligible to take Illinois exemptions. *George*, 440 B.R. at 167. The court determined that Illinois exemption law has an implied residency requirement, so Illinois exemptions are only available to current residents. *Id.* Since the debtor was a Wisconsin resident at the time of filing, she was not eligible to take exemptions under Illinois law. Section 522(b)(3)'s unnumbered final sentence ("the hanging paragraph") therefore allowed the debtor to elect the federal exemptions. *Id.* Additionally, the court held that even without the hanging paragraph, the debtor would have been free to elect the federal exemptions. She was not bound by Illinois' opt-out provision,

2

because the court determined that the opt-out provision also only applies to current residents. *Id.* at 167-68.

In contrast, the bankruptcy court for the Northern District of Indiana held in *Shell* that 11 U.S.C. § 522(b) preempts any residency requirements of state exemption laws. *Shell*, 478 B.R. at 901. Therefore, the debtor in *Shell* was not disqualified from taking Illinois exemptions, and indeed was bound by Illinois's opt-out provision and therefore required to take Illinois exemptions. *Id.*

As the bankruptcy court explained in *Shell*, the point of divergence is the timing at which the debtor's factual circumstances should be evaluated: the court in *George* "place[s] the debtor in the state ordained by 11 U.S.C. § 522(b)(3)(A) during the applicable 180 day period . . . then appl[ies] the debtor's factual circumstances as of the date of the filing of the petition to that placement," while *Shell* advocates "plac[ing] the debtor in a state ordained by 11 U.S.C. § 522(b)(3)(A) during the applicable 180 day period . . . and [then applying the factual circumstances] of the debtor at the time of placement to the issue of domicile." *Shell*, 478 B.R. at 897. The court in *Shell* supports its construction by reasoning that: 1) the statute is unambiguous, and 2) Congress intended to curb forum shopping. *Shell*, 478 B.R. at 898-900.

I disagree with the reasoning of *Shell*, and conclude that *George* has reached the right result. First, the relevant language in 11 U.S.C. § 522(b)(3)(A) does not unambiguously support the *Shell* position. As noted above, Section 522(b)(1) allows a debtor to exempt "property listed in . . . paragraph (3) of this subsection," and Section 522(b)(3)(A) provides that "[p]roperty listed in this paragraph is . . . any property that is exempt under . . . State or local law that is applicable on the date of filing of the petition to the place in which the debtor's domicile has been located . . ." 11 U.S.C. § 522(b). In *Shell*, in order to avoid the problem of residency

3

requirements, the analysis applies the "factual circumstances" of the debtor as they existed during the 180-day period. Logically, this does not include the property itself—any exemptions must be based on the property that the debtor has on the petition date, not that she had at that time of placement. If she owned a motor vehicle during that 180 day period, but no longer owns it at the time of the filing of the petition, she is not eligible for the motor vehicle exemption under Illinois law. Therefore, at least part of the debtor's "factual circumstances" must still be considered as of the petition date. The only fact that *Shell* proposes analyzing as it existed during the 180-day period is the debtor's residency. Since the debtor's property must still be considered as of the petition date, and the statute is silent on the time as of which the debtor's residency is to be considered, the statute does not unambiguously require the *Shell* interpretation.

The second reason that the court gave in *Shell* in support of its construction was Congress's intent to curb forum shopping:

> [I]t is irrelevant to this federal structural placement whether or not the debtor is *in fact* a resident of that state on the date the petition is filed: the focus is the **domicile** of the debtor—*if any there be*—as that concept will usually be defined by the state in which the debtor is placed, *based upon the factual circumstances of the debtor in relation to the issue of "domicile" which existed during the 180 day period.* This makes perfect sense to avoid the forum-shopping for exemptions that occurred pre-BAPCPA by debtors' moves—to say Texas, Florida, Nevada or a few other states—by which debtors sought to establish a domicile for 91 days in a state primarily to take advantage of a homestead exemption law.

*Shell*, 478 B.R. at 898 (emphasis in original). However, the BAPCPA amendment curbs forum shopping by extending the "look-back" window. Forum shopping is no less curbed by the decision in *George* to analyze the debtor's residency as of the petition date. If a residency requirement disqualifies a debtor from taking the exemptions of her former state, the hanging paragraph provides that she will take the federal exemptions. The debtor is still not able to avail herself of the exemptions of her new domicile. If she engineers her move so that she is not bound

4

by her former state's opt-out provision, it is not clear for what she would be shopping or that it is the type of forum shopping Congress intended to prevent. Congress created the federal exemptions, and the baseline is that everyone has the option to elect the federal exemptions, unless and to the extent her state opts out. As the Sixth Circuit Court of Appeals has explained, the intended scope of the opt-out provision is far from clear:

> Sensing a need for reform of the exemption scheme in place under the Bankruptcy Act, Congress tasked a legislative commission with modernizing bankruptcy laws to address a "[l]ack of uniformity in the treatment of debtors." *See* Eric A. Posner, *The Political Economy of the Bankruptcy Reform Act of 1978,* 96 Mich. L.Rev. 47, 68 (1997) (citing Report of the Comm'n on the Bankr. Laws of the United States, H.R. Doc. No. 93–137, at 4 (1973)). That commission recommended adopting a set of uniform federal exemptions, but a "last minute compromise thwarted this attempt at uniformity." Marla D. Wells, Note, *Federal Bankruptcy Exemptions: How Far Out Is Opting Out?,* 37 Baylor L. Rev. 811, 814 (1985). Unfortunately, there is "scant available legislative history" that could provide an insight into what the drafters intended the scope of the opt-out provision to be. James B. Haines, Jr., *Section 522's Opt–Out Clause: Debtors' Bankruptcy Exemptions in a Sorry State,* 1983 Ariz. St. L.J. 1, 8 (1983).

*In re Schafer*, 689 F.3d 601, 606-07 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 1244, 185 L. Ed. 2d 179 (2013). Therefore, the goal of preventing forum shopping seems to be protected by extending the look-back window even if that means a debtor takes the federal exemptions instead of her former state's exemptions.

Generally, the petition date is the date at which a claim to exemption is determined. *In re Coenen*, 487 B.R. 539, 541 (Bankr. W.D. Wis. 2012); *see also In re Olsen,* 322 B.R. 400, 406 (Bankr. E.D. Wis. 2005) (the petition date is generally a "snapshot" for determination of the law and facts with respect to exemptions). That would include considering the debtor's residency as of the petition date. In this case, as noted above, logically the debtors' property must still be examined as it existed on the petition date and not during the 180-day period. The statute additionally confirms that state law will be used as it existed on the petition date. 11 U.S.C. § 522(b)(3)(A) (property may be exempted under "State or local law that is applicable on the

5

date of the filing of the petition"). While the look-back provision determines which state's law to apply to the debtor, it says nothing about analyzing the debtor's residency as it was during the placement period. I see no reason to artificially consider the debtor's residency as of the 180-day period just to avoid the impact of residency requirements.

To the extent that any policy arguments can be made in favor of considering the debtor's residency as of the 180-day period, those are trumped by the presumption of uniformity. The Bankruptcy Clause of the United States Constitution grants Congress the authority to "establish . . . uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const. art. I, § 8, cl. 4. This creates a presumption of uniformity that "operates against incorporating state law as the rule of decision unless the language or context of a particular provision requires otherwise." *In re Whipple*, 417 B.R. 86, 89-90 (Bankr. C.D. Ill. 2009). If considering the debtor's residency as of the petition date means that more debtors end up taking the federal exemptions (either because a state's opt-out provision does not bind nonresidents, or because only residents are eligible to take a state's exemptions and nonresident debtors have to take federal exemptions pursuant to the hanging paragraph), the presumption of uniformity supports that outcome. A debtor's residency for purposes of applying state exemption laws must be analyzed as it existed on the petition date.

Having established that a debtor's residency is to be analyzed as of the petition date, the reasoning of *George* regarding the effect of residency requirements under Illinios exemption laws controls and need not be repeated here. Therefore, the debtors in this case may take the federal exemptions. As in *George*, "either because the Illinois exemptions are limited to Illinois residents, thereby rendering the [debtors] ineligible for any exemptions, and activating the safe-harbor provision of the hanging paragraph after § 522(b)(3)(C), or because the Illinois opt-out

6

provision does not apply to prevent a nonresident from claiming the federal bankruptcy exemptions, the [debtors are] entitled to claim the federal exemptions." *George*, 440 B.R. at 168.

It may be so ordered.


Dated: May 22, 2013

*[signature]*

ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE